Justin Drake COOPER, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–96–00486–CR.

Court of Appeals of Texas,
Austin.

Dec. 11, 1997.

Rehearing Overruled Jan. 29, 1998.

Richard J. Segura Jr., David A. Schulman, Schulman & Krug, Austin, for Appellant.

Ronald Earle, District Attorney, James Adkins, Assistant District Attorney, Austin, for State.

Before CARROLL, C.J., and JONES and KIDD, JJ.

CARROLL, Chief Justice.

A jury found Appellant Justin Drake Cooper guilty of the offense of aggravated sexual assault of a child and assessed his punishment at imprisonment for nine years. Cooper appeals his conviction in three points of error. We will affirm the judgment of conviction.

## BACKGROUND

The complainant in this case is a young girl who went with her cousin to Cooper's home on an evening in April 1995. Sometime during that evening, the complainant and Cooper had sexual intercourse. Cooper was eighteen years old at the time. The complainant was a mere twelve years old. About two months after the incident, the complainant made an outcry to her mother. The complainant's mother contacted the police, and Cooper was charged with, tried for, and convicted of the offense.

In his three points of error, Cooper contends the trial court erred by: (1) limiting his voir dire examination of the jury panel; (2) refusing to admit evidence pertaining to the complainant's prior sexual history; and (3) failing to grant a mistrial when the prose-

cutor allegedly commented on Cooper's failure to testify.

## DISCUSSION

■ In his first point of error, Cooper argues the trial court erred when it refused to allow him to discuss the Spanish Inquisition and the Salem witch trials with potential jurors. Cooper introduced the events after a veniremember expressed that she thought it would be "suspicious" if Cooper did not present any evidence at trial. Upon the State's objection, the court instructed Cooper not to discuss the events or "the O.J. Simpson trial or anything external to this case."

■ The trial court has broad, but not unlimited, discretion to limit the form of the voir dire examination. *Caldwell v. State*, 818 S.W.2d 790, 793 (Tex.Crim.App.1991), *cert. denied*, 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992). We review the trial court's decision for abuse of discretion, focusing on whether the challenged question was proper. *Id.* at 794. A question that constitutes a "global fishing expedition" is not proper. *Id.*

Cooper contends the attempted questions were proper and that he needed to discuss the historical events with the venire to illustrate the purpose of placing the burden of proof on the State. Cooper's questions regarding the Salem witch trials and the Spanish Inquisition were so broad they did not apprise the trial court of the exact issue Cooper intended to explore with the jurors. The vagueness of the challenged questions is apparent when viewed in light of the questions Cooper subsequently addressed to the venire. After the court sustained the State's objection, Cooper discussed explicitly and at great length several reasons why our legal system places the burden of proof on the State. While Cooper's initial questions about historical events might have elicited information on the jurors' views of this issue, they might just as well have elicited information on issues unrelated to the trial of this case. For that reason, the questions were not proper, and we hold the trial court did not abuse its discretion in disallowing them. We overrule point of error one.

■ In point of error two, Cooper contends the court erred in refusing to allow him to introduce evidence of the complainant's past sexual history. Cooper sought to introduce evidence that the complainant had sexual intercourse with her boyfriend around the same time that the alleged offense took place. Cooper sought to establish that the complainant fabricated her story and falsely accused him because she was afraid her mother would find out about her relationship with her boyfriend and not allow her to see the boyfriend anymore. The State objected on the ground that the evidence was inadmissible pursuant to Texas Rule of Criminal Evidence 412. The court conducted a hearing outside the presence of the jury, during which Cooper elicited testimony from the complainant, her mother, and the State's expert witness about the existence of the relationship and the possibility it motivated the complainant to lie. The court then ruled the evidence was inadmissible because the probative value of the testimony did not outweigh the danger of unfair prejudice. We agree with the court's ruling.

The evidence suggesting the complainant falsely accused Cooper to protect her relationship with her boyfriend is thin. The record suggests that, before the outcry, someone might have informed the complainant's mother about the complainant's experience with Cooper. Nothing in the record indicates, however, that that person disclosed or was about to disclose the complainant's alleged sexual relationship with her boyfriend. In fact, the complainant herself disclosed her relationship with her boyfriend to her mother sometime after her outcry. Cooper also speculates that the complainant might have feared her relationship with her boyfriend would be disclosed when her mother took her for a visit to the doctor. The record suggests, however, that the complainant and her mother went to the doctor not because of the complainant's sexual activity but for other medical reasons. Nothing suggests the doctor visit was scheduled *before* the outcry. No direct evidence suggests the complainant thought any "secret" would be disclosed by the doctor or anyone else.

Furthermore, there is compelling evidence that the complainant did not falsely accuse

Cooper. The complainant's cousin, who accompanied her to Cooper's home on the evening of the offense, testified he was in a room next to Cooper's during the alleged offense. He also testified about his conversation with Cooper that evening. According to that witness, Cooper described the offense in detail after the complainant left. The details this witness related in court substantially matched the details the complainant testified to in court. Furthermore, a woman who knew both the complainant's family and Cooper testified about a conversation she had with Cooper after he had been accused. According to that witness, Cooper asked her to explain to the complainant's mother that he had not "raped" the complainant, but merely "had sex with her." Cooper did not object to this testimony and offered nothing to controvert it.

■ We hold the probative value of the evidence did not outweigh the danger of undue prejudice because the record contains virtually uncontroverted evidence that Cooper admitted having intercourse with the complainant to two different people and the evidence that the complainant fabricated her story is tenuous at best. The introduction of evidence about this very young complainant's possible sexual encounter with another boy would *unnecessarily* have subjected her to ridicule, embarrassment, and humiliation. Rule 412 does not contemplate the admission of this type of evidence when the potential injury outweighs the potential usefulness of the evidence. *See* Tex. Rule Crim. Evid. 412. The trial court did not abuse its discretion in excluding the evidence and we overrule point of error two.

■ In his final point of error, Cooper contends the trial court erred by failing to grant a mistrial after the prosecutor improperly commented on Cooper's failure to testify. During the punishment phase of trial, the prosecutor delivered the following argument:

Now, who do you think should get probation for raping a 12–year–old girl? What are you looking for? Well, I think what you're looking for for probation in that circumstance is someone who comes in and can show you that this was an aberration, you are looking for the man who comes in who was an upright, decent, law-abiding man, who was in the grip of some horrible compulsion, who did one thing, who has people come in and say, he works for me, he's my neighbor, he's in my family. Let me tell you what this man is like. This is an aberration, this is not what this man is. Give him a chance, put him on probation. Look what he's done with his life. That's a way for you to figure out what he will do in the future. What you want is a person who would come up and tell you that he had expressed remorse. He had three opportunities—

At that point, Cooper objected on the grounds that the prosecutor had improperly commented on his failure to testify. The court sustained the objection and instructed the jury not to consider the prosecutor's statement for any purpose. The judge, however, denied Cooper's request for a mistrial. The prosecutor continued then continued with the following argument:

You've heard three remarks that this defendant made to three different people. You heard what he said to [a witness] the night of the rape ... [that witness] was there that night. [He] did not report any sorrow or any shock or any expression of remorse by the defendant. You heard the confrontation, ... [the complainant's] mother came in, and said, did you do this to my daughter? Again, flat denial, no remorse. And you heard [another witness], and that's the one that I just have to shake my head. You know, can you go over to [the complainant's mother], they're being so unreasonable. I didn't rape her. I just had sex with her. What's the problem here? Why is everybody mad at me? That's not what you're looking for. That's not the mind of someone that's going to be helped, because you want someone who takes an *opportunity* to get help, who says, what is wrong with me? Dear, God, I've had sex with a 12–year–old girl. What is the matter with me? I've got to get help.

Cooper contends three of the comments the prosecutor made before the objection constituted comments on Cooper's failure to testify. First, he complains of the comment, "what you're looking for for probation in that circumstance is someone who comes in and can show you that this was an aberration." Second, he complains of the comment, "you

are looking for the man who comes in who was an upright, decent, law-abiding man, who was in the grip of some horrible compulsion." Finally, he complains of the comment, "what you want is a person who would come up and tell you that he had expressed remorse. He had three opportunities—."

■ Comments by the State that allude to the defendant's failure to testify are error. *E.g., Montoya v. State,* 744 S.W.2d 15 (Tex.Crim.App.1987). In deciding whether a comment was error, we must look at it from the jury's perspective and decide whether the comment *necessarily* referenced the defendant's failure to testify. *See Swallow v. State,* 829 S.W.2d 223, 225 (Tex.Crim.App. 1992) (citing *Koller v. State,* 518 S.W.2d 373, 375 (Tex.Crim.App.1975)). Language that can be construed as referring to the defendant's failure to present evidence from sources other than himself does not amount to a comment on the defendant's failure to testify. *Id.* (citing *Hammond v. State,* 799 S.W.2d 741, 748 (Tex.Crim.App.1990)). The State's reference to a defendant's failure to express remorse *himself* during the trial is a comment on the defendant's failure to testify. *Id.* at 226. On the other hand, the State's reference to the defendant's failure to introduce evidence of remorse *through other witnesses* may be erroneous for other reasons but does not constitute a comment on the defendant's failure to testify. *Id.* at 225 n. 2 (citing *Thomas v. State,* 638 S.W.2d 481 (Tex. Crim.App.1982)).

The three statements Cooper complains of, when read in a vacuum, might be construed as comments on Cooper's failure to testify. They might be read that way because the prosecutor used the ambiguous words "someone" and "he" in the comments. The prosecutor's meaning becomes clear, however, when the comments are read in the context of his entire argument and the evidence admitted. They were not a direct reference to Cooper's failure to testify himself, but concerned Cooper's failure to present evidence through *another witness* who could establish that Cooper was an otherwise law-abiding citizen who was remorseful after the incident. The last comment, "he had three opportunities—," could be construed as a reference not to Cooper's opportunities to take the stand but to his opportunities to present evidence

through the three witnesses who testified about his pre-trial statements. The comment might have called for inadmissible evidence, but it was not necessarily a reference to Cooper's failure to testify. *Compare Swallow,* 829 S.W.2d at 226 *with Thomas,* 638 S.W.2d at 484–85.

■ Even if the comments were erroneous, we conclude the trial court and the prosecutor cured any harm. In determining whether erroneous comments harmed the defendant, we consider the totality of the facts and arguments presented in the case. *Montoya,* 744 S.W.2d at 38. The court instructed the jury to disregard the comments. Furthermore, the prosecutor's continued argument revealed that he was not speaking to Cooper's absent testimony, but to the substance of the testimony presented through other witnesses during the guilt phase of trial. In light of the evidence and argument as a whole, we hold the comments were not reversible error, if they were error at all. We, therefore, overrule Cooper's third point.

## CONCLUSION

Having overruled all of Cooper's points of error, we affirm the judgment of conviction.